UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHERYL SNYDER, <br><br>                          Plaintiff, <br><br>     v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br>                          Defendant. | Case No. 3:13-cv-05075-BHS-KLS <br><br> REPORT AND RECOMMENDATION <br><br> Noted for March 14, 2014 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On May 5, 2009, plaintiff filed an application for disability insurance benefits, alleging disability as of July 1, 2008, due to thoracic outlet syndrome, degenerative disc disease and fibromyalgia.  See ECF #10, Administrative Record ("AR") 21, 166.  That application was denied upon initial administrative review on November 3, 2009, and on reconsideration on

REPORT AND RECOMMENDATION - 1

March 22, 2010. See AR 21. A hearing was held before an administrative law judge ("ALJ") on March 17, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 37-69.

In a decision dated July 26, 2011, the ALJ determined plaintiff to be not disabled. See AR 21-31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 3, 2012, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981. On February 25, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #4. The administrative record was filed with the Court on May 6, 2013. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in discounting the opinions of Arunas Banionis, D.O., and Dennis Koukol, M.D.; (2) in assessing plaintiff's residual functional capacity; and (3) in posing an incomplete hypothetical question to the vocational expert. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision to deny benefits be reversed and that this matter be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

REPORT AND RECOMMENDATION - 2

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[1]

I.  The ALJ's Evaluation of the Opinions of Dr. Banionis and Dr. Koukol

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of

REPORT AND RECOMMENDATION - 4

those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

     A.    Dr. Banionis

With respect to the opinion of Dr. Banionis, the ALJ found as follows:

> Arunas Banionis DO, the claimant's treating primary care physician, completed a functional assessment in January of 2011 (14F).  Dr. Banionis opined moderate limitations on bilateral fine manipulation, marked limitations on bilateral reaching (including overhead reaching), and noted that the claimant's impairments interfere with the ability to keep the neck in a constant position.  He opined that the claimant would be able to sit for 6 hours in an 8-hour workday, stand and/or walk for a total of 2 hours in an 8-hour workday, would need to get up and move around every 30 minutes, and can lift and carry up to 5 pounds occasionally.  In terms of grasping, turning, and twisting objects, he opined marked limitation on the right; it is unclear whether he opined moderate or marked limitation on the left.  He opined that the claimant is incapable of even low-stress jobs, would need unscheduled breaks throughout the workday, and would be absent from work more than 3 times per month due to her impairments and treatment.  He noted multiple environmental limitations, indicating that the claimant needs to avoid noise, fumes, gases, temperature extremes, humidity, dust, and heights.  He opined that she should not push, pull, kneel, bend, or stoop.  He noted that these limitations had been present since he started treating her in November of 2004.
>
> Dr. Banionis has a treating relationship with the claimant, but his opinion is not well supported.  He noted no physical exam findings in support of his opinion (See 14F1).  His treatment notes do not contain clinical findings that would support his opinion.  He found tenderness to cervical spine with

REPORT AND RECOMMENDATION - 5

>rotation on one occasion (5F10).  He noted the claimant's spine MRI as
>support (14F3), but as noted above, that has shown only mild to moderate
>degenerative changes, and the claimant's treatment providers have concluded
>that it is not the primary cause of her symptoms.  Further, Dr. Banionis
>indicated that these limitations have been present since 2004.  The current
>medical record reflects only two visits to Dr. Banionis, one in April of 2009
>and one in July of 2009 (5F).  There is no evidence that he performed a
>physical examination at the time he completed the form in January of 2011.
>He thus had not seen the claimant for about a year and 6 months at the time he
>completed this form.  His opinion is inconsistent with treatment notes from his
>own clinic, and with the medical record as a whole, which show that the
>claimant's symptoms improved with treatment, and that she has not received
>treatment for the alleged impairments since February of 2010.  Finally, his
>opinion is inconsistent with the claimant's work activity since the alleged
>onset date.  For these reasons, the undersigned gives Dr. Banionis's opinion
>little weight.

AR 28-29.  Plaintiff argues these are not sufficient reasons for rejecting Dr. Banionis's opinion.  The undersigned disagrees.

Plaintiff is correct that the ALJ erred in stating Dr. Banionis saw her only two times and that there is no evidence he examined her in January 2011, as the record shows otherwise. See AR 267, 270-71, 377-84, 388-89.  Given the ALJ provided other, valid reasons for rejecting the opinion of Dr. Banionis, however, that error is harmless.[2]  First, as pointed out by the ALJ, Dr. Banionis's own progress notes – including those at the time of his January 2011 opinion – fail to support the severity of limitation he found. See id.  Nor do the other clinical findings in the record support the severity thereof, even if as plaintiff asserts it is reasonable to conclude Dr. Banionis relied on them in forming his opinion. See AR 229-32, 236-37, 269, 276-78, 284, 289-92, 299-300, 316-17, 321-22, 330-31, 335-44, 393, 447-50, 465-67; see also Batson, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if it is inadequately supported by clinical findings or "by the record as a whole").

---

[2] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

REPORT AND RECOMMENDATION - 6

While plaintiff does cite the late May 2007 opinion of Dr. Alisa Blitz-Seibert that she could return to work with certain functional limitations in the use of her upper extremities, not only is that opinion dated more than a year prior to plaintiff's alleged onset date of disability, but Dr. Blitz-Seibert anticipated that the limitations she assessed could be removed by late June 2007. See AR 426; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that has lasted or can be expected to last for continuous period of not less than twelve months); Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) (finding medical opinions that predate alleged onset of disability to be "of limited relevance").  Plaintiff also points to comments in the medical records regarding her pain complaints (see ECF #14, p. 8 (citing AR 315-28, 580-81, 603)), but such complaints do not constitute objective clinical findings, and as the ALJ noted the medical evidence overall indicates substantial improvement in her pain with treatment (see AR 229, 237, 269, 299, 232, 276, 317, 321, 330-31, 335, 337, 339, 341, 343, 393, 465).

Lastly, the undersigned notes the ALJ pointed to the inconsistency between the work activity plaintiff engaged in after her alleged onset date of disability and Dr. Banionis's opinion, a finding which plaintiff does not challenge and which constitutes a valid basis for discounting that opinion. See Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion).  Accordingly, the undersigned finds no reversible error on the part of the ALJ in rejecting the opinion of Dr. Banionis.

B.      Dr. Koukol

Plaintiff also takes issue with the ALJ's following findings:

> [Dr. Koukol] opined that the claimant would be able to perform light work with occasional pushing and pulling with the right upper extremity; occasional

REPORT AND RECOMMENDATION - 7

> crawling; occasional climbing of ramps and stairs; a preclusion on climbing ladders, ropes, and scaffolds; use of the right upper extremity limited to occasional overhead reaching and frequent handling; and avoidance of concentrated exposure to vibration and hazards (8F, 12F). This assessment is partially consistent with the medical record, and adequately considers the claimant's subjective complaints. However, it does not adequately consider her improvement with treatment, and her lack of treatment since February of 2010. The undersigned gives the State agency physical assessment some, but not great weight.

AR 28. Specifically, plaintiff argues the ALJ failed to indicate which portions of Dr. Koukol's opinion he was adopting, and failed to give specific and legitimate reasons for not adopting the limitation to occasional pushing and/or pulling with the right upper extremity. It appears the only limitations the ALJ did not adopt are the pushing/pulling limitation plaintiff refers to here and limitations to occasional climbing ramps/stairs and occasional crawling. See AR 26, 302-03. Nevertheless, the undersigned agrees the ALJ failed to properly consider those limitations. First, while as discussed above the record does show significant improvement in plaintiff's condition, the ALJ fails to explain why he adopted Dr. Koukol's limitation concerning occasional overhead reaching but not that regarding occasional pushing/pulling, or why he adopted Dr. Koukol's opinion that plaintiff should avoid climbing ladders, ropes or scaffolds but not his opinion that she could climb ramps/stairs and crawl only occasionally. Thus, without more in terms of an explanation for the above omissions, the undersigned cannot determine if the ALJ's assessment of plaintiff's physical capabilities is supported by substantial evidence.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on

REPORT AND RECOMMENDATION - 8

the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform light work . . . except that [she] should never climb ladders, ropes, or scaffolds.  Reaching, including overhead reaching, is limited to occasional.  Handling and fingering are limited to frequent.**

AR 26 (emphasis in original).  Plaintiff argues the above RFC assessment is not supported by substantial evidence.  Because as discussed above the ALJ failed to properly explain why he did not adopt all of the functional limitations assessed by Dr. Koukol, it cannot be said at this time that the ALJ assessed plaintiff with a residual functional capacity that completely and accurately describes all of physical capabilities.  Accordingly, it also cannot be said at this time that that assessment is supported by substantial evidence.

REPORT AND RECOMMENDATION - 9

III. The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 66. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 66-67. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 30. But because as discussed above, the ALJ erred in regard to his treatment of Dr. Koukol's functional assessment, and thus in assessing

REPORT AND RECOMMENDATION - 10

the above residual functional capacity, the undersigned agrees with plaintiff that the hypothetical question the ALJ posed to the vocational expert also cannot be said at this time to completely and accurately describe all of plaintiff's functional limitations or that it or the ALJ's step five determination is supported by substantial evidence.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  The undersigned therefore recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **March 14, 2014**, as noted in the caption.

DATED this 25th day of February, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11